## DETERMINATION AS TO THE VALUE OF A HORSE.

Circuit Court of Lorain County.

Henry Buddenburg v. Anthony Wearsch.

Decided, April 20, 1912.

*Measure of Damages—Value Given By Witnesses—Other Evidence of Value—Charge as to Value.*

Where the question of the value of a horse is before the jury and witnesses have given their opinions as to its value, describing it, it is not error to instruct the jury that if it, from other evidence in the case, was of the opinion that the horse was worth less than the value put·upon it by the witnesses, they might so decide upon their own judgment.

*Q. A. Gillmore,* for plaintiff in error.
*Fauver & Rice,* contra.

Winch, J.; Marvin, J., and Niman, J., concur.

Defendant in error was plaintiff below, and recovered a judgment against plaintiff in error for the wrongful death of his mare, which he claimed resulted from the negligent use of a pistol by Buddenburg on the premises of Wearsch.

It appeared from the evidence that on Thanksgiving day, 1908, the parties to this action, who are brothers-in-law, and Joe Wearsch, brother of Anthony, had been out hunting in the forenoon, and came back to the Wearsch farm about noon. There they probably had some hard cider, and fell to discussing the relative merits of a new revolver owned by Henry and an old one belonging to Joe. They decided to try the "guns," as they called these revolvers, and Joe and Henry went outside the house to shoot at a mark east of the house; some horses, among them the mare which was killed, were north of the house. The old gun didn't work very well and it went off unexpectedly in the hands of either Joe or Henry, and probably this shot hit the mare, although nobody at the time knew of that fact. The horses ran off down the lane to the woods, and toward evening the mare

was found there suffering in a fence corner and had to be put out of her misery.

Joe says the revolver went off in Henry's hands; the hired man was the only other person present at the time; he is uncertain as to whether the gun exploded in the hands of Henry or Joe; at least he contradicts himself upon the question. Anthony and his wife testify that Henry came in to wash the powder marks off of his hand, then went out again, and he and Joe and Anthony, who went out with then, continued to shoot at a mark, the old revolver meanwhile having been fixed up so that it would work properly.

In the evening, after they had killed the mare, Anthony testified that Henry said *he* had shot the mare and that Anthony should go and buy another horse and he would pay for it, and within a week Henry did give him twenty dollars towards payment for the new horse.

Joe also testifies that he heard Henry say he had shot the mare and that he would pay for another horse.

Mrs. Wearsch testifies that Henry said he shot the horse, that Anthony was going to kill him for it and he wanted Mrs. Wearsch to come out and quiet Anthony down; that he would pay for another horse, and he was going to bury the revolver in the same hole with the mare.

Henry testified that the gun went off accidentally twice, first in Joe's hands, after which they noticed the horses running down the lane and spoke about Roxie, the mare, drooping her head, and afterwards in the hand of Henry, when he was fixing it.

The evidence in this case is conflicting, but it is evident that on the evening of the day the mare was shot, everybody, including Henry, thought that he had shot the mare. Afterwards he evidently changed his mind and didn't want to pay for the mare, but there was evidence in the case tending to show that he was responsible for the mare's death, and we are unable to say that the verdict was not sustained by sufficient evidence. The jury saw all the witnesses, and gave such credit to each one of them as they were entitled to in their judgment.

Doubtless the jury believed that Henry admitted that the death of the mare was due to his carelessness, and so believing, brought in a verdict against him.

Complaint is made that error was committed in permitting the witness C. H. Johnson and John Stark to testify as to the reasonable market value of the mare at the time in the community, but as they qualified and knew the mare, there was no error committed in this respect.

After the jury had been charged and had retired, it came back into open court for further instructions, and one of the jury men addressed the court as follows:

"The question is, the jury is undecided as to whether in fixing a value for this horse they can go below the value given in the petition?"

And thereupon the court instructed the jury as follows:

"The measure of damages is the market value of the horse at the time, giving credit for $19, which the plaintiff claims he has had. What that market value is, you are to determine from the evidence in the case, and the evidence in the case on that subject was not all alike."

And thereupon the said juror inquired of the court:

"Can they go, for instance, below the lowest value that is placed upon this animal?"

To which the court replied:

"I think as a proposition of law that they could not, unless the parties might feel willing to agree to give the jury a little latitude; but otherwise than that, you must determine it from the testimony in the case and base it upon that. I say this: that when a witness testifies as to his judgment as to the value, he also testifies as to his knowledge of the horse, and if there is testimony as to the horse that will enable you to fix a value upon it, you can do so regardless of the judgment of those who testify on that subject. Do I make myself plain? Supposing a case where there was testimony that a horse had but three legs and those who saw the horse and placed a value upon it placed it at a certain sum, but they described the horse sufficiently to you so that you are able to say that such a three legged horse as that was not worth so much money, you have a right in that instance to take into consideration your own judgment. In other words, you are not absolutely bound by the amount fixed by them, if there is other testimony in the case that will warrant your disregarding it. I think I will leave that instruction in that shape."

It is claimed that these remarks of the court were prejudicial to plaintiff in error, but while the first sentence of the final instructions was not strictly correct, and the illustration used by the trial judge was not a happy one, still taking the whole paragraph, the law was fully and properly charged, and the jury was clearly authorized under it and distinctly given to understand, that though the witness had given their own opinions as to the value of the mare, still, if the jury, from other evidence in the case, were of the opinion that she was worth less, they might so decide upon their own judgment.

No other errors are alleged to have occurred on the trial, and having disposed of all that has been brought to our attention in favor of defendant in error, the judgment is affirmed.